OLLIE K. PATE and AUDREY PATE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pate v. Commissioner
Docket No. 11020-75.
United States Tax Court
T.C. Memo 1976-309; 1976 Tax Ct. Memo LEXIS 95; 35 T.C.M. (CCH) 1385; T.C.M. (RIA) 760309; September 29, 1976, Filed Ollie K. Pate, pro se. Gary F. Walker, for respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1972 and 1973 in the amounts of $1,638.62 and $1,715.92, respectively, and for the year 1972 an addition to tax under section 6651(a)(1) in the amount of $409.66. The issues for decision are (1) the amount of deduction to which petitioner is entitled in each year for the expense *96 of operating three trucks which were used in his business as a contract mail carrier, and (2) whether $840 paid by petitioner in 1972 for the premium on a performance bond covering a 4-year contract is a deductible business expense in the year paid or a capital expenditure to be amortized over the period of the contract. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, whose legal residence was in Micro, North Carolina at the time of the filing of their petition in this case, filed joint Federal income tax returns for the calendar years 1972 and 1973 on a cash basis of accounting with the Internal Revenue Service Center, Memphis, Tennessee. Petitioners' return for the year 1972 was filed on March 14, 1974. Sometime prior to March 14, 1974, Ollie K. Pate (hereinafter referred to as petitioner) was contacted by an employee of the Internal Revenue Service and asked whether he had filed a return for 1972. Petitioner told this employee that he had not filed his 1972 return since he had not had the money to pay any tax that might be due. Petitioner then called on the Internal Revenue Service employee and asked *97 for and was given assistance in filing his 1972 return. Petitioner is now and was during the years 1972 and 1973 and for a number of years prior thereto a contract mail carrier. Petitioner would enter into a 4-year contract with the United States Government or Postal Service to deliver mail in a specified area at a specified rate. It was incumbent on petitioner to pay all expenses in connection with performance of the contract. In connection with performing his mail delivery contract, petitioner during 1972 and 1973 used three trucks which he owned. He only operated two trucks on a regular basis, but one of the trucks was a standby truck in case a truck in regular use was out of operation for repairs or service. The truck which was generally used by petitioner during the years here in issue as a standby truck had been acquired by petitioner around 1965. In December 1971, petitioner had a new engine installed in this truck at a cost of $1,204.74. Petitioner borrowed the entire amount necessary for the installation of the engine in this truck. An interest charge of $144.36 was added to the amount financed and petitioner agreed to pay the total loan in 18 monthly installments *98 of $74.95 each, commencing January 1, 1972, and did during the years here in issue make the payments. One of the other two trucks was acquired prior to the years here in issue and the other in the year 1972. The trucks are 2-ton cargo trucks with 16 to 18-foot van-type bodies. During the years here in issue petitioner utilized all three of the trucks in hauling mail for the United States Postal Service. Petitioner himself drove one of the trucks. He hired two employees who drove one of the other trucks during consecutive hours. During 1972 the three trucks were driven a total of 111,000 miles in connection with petitioner's business of hauling mail for the United States Postal Service, and during 1973 the three trucks were driven 119,108 miles in connection with petitioner's mail carrying business. Petitioner was required to obtain a performance bond at the beginning of each new 4-year contract with the Postal Service to cover the entire 4-year period. In May of 1972 petitioner paid $840 for a premium on a performance bond to cover the 4-year period of his new contract which commenced July 1, 1972. The Internal Revenue Service employee who assisted petitioner in preparing *99 his 1972 return suggested that petitioner compute his expenses of operating his mail trucks on the basis of 15 cents per mile. Petitioner therefore on Schedule C of his return which set forth the receipts and expenses of his business as a contract mail carrier claimed a deduction of $16,650, explained as follows: 111,000 miles on (2) 2 ton trucks at 15( per mile $16,650.00 The employee of the Internal Revenue Service who assisted petitioner in preparing his return discussed with petitioner whether 15 cents or 16 cents per mile was petitioner's estimated cost of operating the trucks. On his 1973 return petitioner computed the cost of operating the mail trucks at $19,057.28, which was explained as follows: 119,108 miles on Three (3) 2 Ton Trucks at 16( per mile $19,057.28 Respondent, in his notice of deficiency to petitioner, allowed only $7,790.08 of petitioner's claimed deduction for expenses of operating his trucks in 1972 and only $11,182.34 of the expenses claimed for operating his trucks in 1973. The amount allowed by respondent in each of the years was computed as follows: 1972
1973
Gas and oil
$4,621.52
$ 6,987.88
Repairs, parts and tires
1,472.26
2,039.26
Insurance
279.55
224.65
222.55
Less amount claimed
0
(204.60)
Depreciation
1,188.75
1,684.60
License
228.00
228.00
Total allowed
$7,790.08
$11,182.34
*100 The depreciation deduction allowed by respondent in each of the years was computed as follows: REMAINING
COST OR
DEPRECIA-
OTHER
TION
BASIS
OR
TO BE
ALLOWABLE
RECOVERED
COST OR
IN
AFTER
DESCRIPTION OF PROPERTY OR
DATE
OTHER
PRIOR
YEAR
GROUP AND GUIDELINE CLASS
ACQUIRED
BASIS
YEARS
ENDING
METHOD
7-26
'72 Truck
72
4,250.00
0
4,250.00
SL
10-24
'70 Truck
69
4,173.00
1,669.20
2,503.80
SL
TOTAL DEPRECIATION
1,188.75
1,684.60
DEDUCTION ALLOWABLE ON
ITEMS CHANGED
TOTAL
DEPRECIATION DEDUCTION
ALLOWABLE ON ITEMS CHANGED
DEPRECIATION DEDUCTION
DEPRECIATION DEDUCTION CLAIMED ON ITEMS CHANGED
CLAIMED ON ITEMS CHANGED
0
0
ADJUSTMENT - INCREASE OR
ADJUSTMENT - INCREASE OR (DECREASE)
(DECREASE)
DEPRECIATION ALLOWABLE
RATE (%)
DESCRIPTION OF PROPERTY OR
OR
TAX YEARS ENDING
GROUP AND GUIDELINE CLASS
LIFE
(Years)
1972
1973
'72 Truck
5 yrs
354.15
850.00
'70 Truck
5 yrs
834.60
834.60
TOTAL DEPRECIATION
DEDUCTION ALLOWABLE ON
ITEMS CHANGED
TOTAL
DEPRECIATION DEDUCTION
ALLOWABLE ON ITEMS CHANGED
DEPRECIATION DEDUCTION
CLAIMED ON ITEMS CHANGED
0
ADJUSTMENT - INCREASE OR
1,188.75
1,684.60
(DECREASE)
*101 At the trial respondent conceded that his computation of petitioner's expenses of operating his trucks for the year 1972 failed to include $1,950.70 of operating expenses and $107.31 of miscellaneous expenses. Respondent also conceded that petitioner was entitled in each of the years 1972 and 1973 to deductions of depreciation in addition to the amount determined by him because of no depreciation deductions having been allowed on the new engine put into the truck which petitioner had acquired around 1965. The parties agreed that depreciation on this engine should be computed on the basis of a 3-year useful life for the engine and a cost basis of $1,204.74.At the trial respondent conceded that petitioner was entitled, in addition to allowable deductions as determined in the notice of deficiency, to deduct as interest paid in each of the years 1972 and 1973 the part which represented interest of each monthly payment made with respect to petitioner's financing of the new engine put in his truck. Respondent also conceded that petitioner in 1972 paid the $840 premium cost for a performance bond required in connection with his business as a contract mail carrier and that this payment *102 had not been allowed as a deduction to petitioner or amortized over the 4-year contract period. Respondent took the position that the $840 payment should be amortized over the 4-year life of the contract covered by the bond. OPINION At the trial petitioner took the position that he was entitled to use 15 cents a mile as the cost of operating his trucks since this method had been suggested to him by a Revenue Service employee. In the alternative, he contended that respondent had not allowed him all expenses connected with operation of the trucks. He produced information at the trial in support of his position that he had not been allowed all his operating expenses of the trucks and respondent has now conceded that petitioner is entitled to additional deductions to the extent that petitioner produced information at the trial substantiating such additional deductions. We have set forth in our findings respondent's concessions in this respect and petitioner did not contend at the trial that he had any further documents or other evidence to support additional deductions for the cost of operating his trucks. Petitioner did contend that due to his limited education and poor bookkeeping *103 methods he had probably not been able to show all expenses which he incurred in connection with operation of the trucks. The fact that a Revenue employee suggested to petitioner that he estimate his cost of operating the trucks at 15 cents per mile does not entitle petitioner to make an estimate of his expenses of operating the trucks. Under section 162, I.R.C. 1954, [1] petitioner is entitled to deduct the ordinary and necessary expenses incurred in carrying on his trade or business. These expenses, insofar as they relate to the trucks, are his actual costs for gas and oil, repairs, including parts and tires, insurance, license fees, and other expenses directly related to operation of the trucks, and a reasonable allowance for depreciation with respect to the trucks. Insofar as this record shows, with the concessions now made by respondent, petitioner is obtaining a deduction for all these costs. Respondent submitted a trial memorandum in which he contended that petitioner was not entitled to compute his costs of operating the trucks on the basis of Revenue Procedure 70-25, 1970-2 C.B. 506. *104 Respondent pointed out that this Revenue Procedure stated that the simplified method was not acceptable for computing deductible costs of vehicles used for hire, such as taxicabs, or two or more automobiles used simultaneously, such as in fleet operations. We do not understand that petitioner is claiming the 12 cents per mile for the first 15,000 miles of use of his trucks in each year, and the 9 cents per mile for use for business purposes in excess of 15,000 miles per year of such trucks, which are the amounts allowed under Revenue Procedure 70-25 for business use of an automobile. While we have not made the actual computation of these mileage rates applied to the miles petitioner drove his trucks in the years here in issue, it appears that petitioner would obtain little, if any, additional deductions from use of these rates. Petitioner is claiming to be entitled to compute his truck-operating costs at 15 cents per mile but has assigned no reason for use of 15 cents per mile other than the fact that he considered this method of computation of his truck-operating costs to have been suggested by an Internal Revenue Service employee. If petitioner is contending for *105 use of Revenue Procedure 70-25 for the computation of his allowable deduction for costs of operating his mail trucks, we hold in accordance with Carroll H. West,63 T.C. 252 (1974), that he is not entitled to so compute this deduction. The Carroll H. West case involved a taxpayer who operated two trucks on separate newspaper delivery routes. We held that taxpayer not to be entitled to compute his deductible expenses under Revenue Procedure 70-25. In that case we pointed out that this Revenue Procedure did not create a deduction, but merely was intended to relieve certain self-employed individuals and employees who used their own vehicle for business purposes of the difficulty of substantiating the cost of operation of the vehicle and from the detailed record keeping and allocation problems involved where expenditures for maintenance and gasoline were made for both business and personal uses. We pointed out that respondent is clearly entitled to place restrictions on the type of businesses qualified for use of the simplified method set forth in Revenue Procedure 70-25. We hold that petitioner is only entitled to deduct *106 in 1972 and 1973 his actual costs, including depreciation, of operating his mail trucks. The only remaining issue is whether petitioner is entitled to deduct in the year 1972 the entire cost of the premium on his performance bond or must amortize this cost over the 4-year life of the mail contract for which the bond was required. Ordinarily, an amount paid by a cash basis taxpayer for an asset that has a useful life of more than one year is not deductible in the year of payment but must be amortized over the useful life of the asset acquired. As we pointed out in Arthur E. Ryman, Jr.,51 T.C. 799, 802 (1969), "any expenditure which secures a benefit to the taxpayer lasting beyond the taxable year is generally in the nature of a capital expenditure and hence not an 'ordinary' expenditure currently deductible pursuant to section 162(a)." Because of the nature of petitioner's performance bond, in our view the payment of the $840 was capital in nature in that it secured a benefit for petitioner that extended beyond the taxable year.The premium for the bond here involved is comparable to the premium for the bond involved in Est. of George B. Leonard Holding Corp.,26 B.T.A. 46 (1932). *107 In that case the bond was required to insure erection of a building on leased land. We held that the amount paid for the bond premium should be prorated over the life of the lease. We therefore hold that the $840 paid by petitioner for a premium on a performance bond covering his contract for the 4-year period July 1, 1972 through June 30, 1976 should be prorated over the 4-year contract period. The record is not clear whether petitioners are contesting the addition to tax under section 6651(a)(1) for late filing of their 1972 return. If they are contesting this addition to tax, we sustain respondent's imposition of the addition to tax since petitioners have failed to show reasonable cause for the late filing. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated.↩